

FILED
2009 May-05  PM 02:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

VICTOR COAR,    )
         )
   Plaintiff,   )
         )
vs.         )  2:07-CV-02168-LSC
         )
ALABAMA AIRCRAFT INDUSTRIES, )
INC.- BIRMINGHAM,   )
         )
   Defendant.   )

MEMORANDUM OF OPINION

I. Introduction.

The Court has for consideration a motion for summary judgment, which was filed by the defendant, Alabama Aircraft Industries, Inc.-Birmingham ("AAI" or "Defendant") on January 14, 2009.   (Doc. 20.) Plaintiff Victor Coar ("Coar" or "Plaintiff") sued AAI for race discrimination with respect to his termination under 42 U.S.C. § 1981 ("§ 1981") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, ("Title VII"), as well as retaliatory discharge under Title VII .[1]  (Doc. 13.)  AAI has moved

---

[1]The Amended Complaint also includes a claim that Defendant violated 42 U.S.C. § 1988.  (Doc. 13.)   Because Plaintiff has not addressed this allegation in his memorandum in response to summary judgment (Doc. 23), the Court concludes that he

for summary judgment on all of Plaintiff's claims.  The issues raised in that

motion for summary judgment have been briefed by both parties[2] and are

now ripe for review.  Upon full consideration of the legal arguments and

evidence presented, AAI's motion for summary judgment will be granted in

all respects.

II.    Facts.[3]

AAI is a government contractor that repairs and maintains military

aircraft.  Coar, an African-American male, began his employment with AAI

on June 25, 1998, as an electrician.   In 2003, he became an aircraft

mechanic.

During his employment, Coar was issued discipline at least fifteen

---

has abandoned this claim.  *See, e.g., Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d
587, 599 (11th Cir. 1995) ("[G]rounds alleged in the complaint but not relied upon in
summary judgment are deemed abandoned.").

[2]Both parties filed motions to exceed the Court's page limit for response and reply
memoranda.  (Docs. 25, 26.)  These motions are GRANTED.

[3]The facts set out in this opinion are gleaned from the parties' submissions of facts
claimed to be undisputed, their respective responses to those submissions, and the
Court's own examination of the evidentiary record.  All reasonable doubts about the
facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks
Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for
summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r
U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

times for a variety of offenses.  Some of these were rescinded through the

grievance procedure and/or became the subject of EEOC charges, which

were filed by Coar in October 1998, July 2001, December 2001, and April

2004.  In his EEOC charges, Coar accused AAI of racial discrimination and

retaliation.

On July 22, 2004, Coar entered into a voluntary settlement agreement

with AAI, which resolved his April 2004 EEOC charge and all prior complaints

of racial discrimination and retaliation.   Pursuant to that settlement

agreement, Coar signed a "Confidential Release of All Claims," which states:

> [Plaintiff] waives and forever releases any and all
> claims arising out of [his] employment with
> [Defendant], including, but not limited to, claims,
> charges or causes of action for back pay, front pay,
> damages of any kind, reinstatement, legal fees and
> other expenses.  Employee releases and waives all
> claims pursuant to Title VII of the Civil Rights Act of
> 1964, as amended, 42 U.S.C. Section 1981, the
> Family and Medical Leave Act, the Americans with
> Disabilities Act, the Age Discrimination in
> Employment Act, the Older Worker Benefits
> Protection Act, common law and any and all other
> federal, state and/or local laws that may apply to
> [Plaintiff] and/or his employment.  This is a general
> release intended to release any and all claims of
> each and every nature that [Plaintiff] has or may
> have as of the date that this Release is executed by

the parties.

Coar was again issued discipline for various offenses in January 2005, December 2005, and March 2006.  Coar filed an EEOC charge on January 17, 2006, with regard to the December 2005 discipline, alleging it was discriminatory and retaliatory.

On June 27, 2006, B.J. Cotton ("Cotton"), the Labor Relations Manager, observed Coar sitting on top of a rail of a B-4 aircraft stand, approximately ten feet off the ground, while talking on his cell phone. Cotton subsequently issued a written discipline and suspension to Coar for violating Company Rule 37, which prohibits "[d]isregard for safety or fire regulations or common safety practices, improper or unauthorized use of compressed air or gasses."  Coar initially filed a grievance based on the severity of the discipline, but later withdrew it.  Coar admits his conduct on June 27, 2006, was a violation of Company Rule 37.

On October 18, 2006, Coar worked the third shift from 11:00 p.m. to 6:00 a.m. the following morning; Matt Gurganus ("Gurganus") was his supervisor.  Initially, Coar was assigned to work on the wing of the "E14" aircraft in the "East Two" location of the plant.  However, after Coar

informed Gurganus he could not perform his assignment safely because of a substance on the wing of the aircraft, Gurganus reassigned Coar to the "E12" aircraft in the "West Two" location.

On October 19th, Gurganus told his supervisor, Bobby Gardner, and Cotton that he saw Coar working on top of the wing of an aircraft without being hooked to the fall restraint/arrest system, in violation of Company Rule 37.   Employees working on the wing of an aircraft must wear a safety harness and use the fall restraint system, which includes hooking a lanyard to the rear of the harness at the place where work is being done on the wing.  Cotton testified he suspended Coar pending discharge because it was Coar's second reported violation of Company Rule 37 in less than four months.  On Coar's suspension notice, dated October 20, 2006, it is noted that in addition to Gurganus, two other supervisors, Sam Sims and Tony Tankersley, had each witnessed Coar working on the wing of the "E12"aircraft without using the fall arrest system.

Pursuant to the collective bargaining agreement between Coar's union and AAI, Coar met with Cotton and a union representative.  In that meeting, Coar was given the opportunity to tell his version of events.   Coar told

Cotton that he had been misidentified.  He pointed out that the written discipline said the "E12" aircraft was in the "East Two" location instead of the "West Two" location.  Coar admits, however, that he worked on the "E12" aircraft at the time in question.  Cotton testified that he realized he had written the wrong location on the discipline form and crossed out "East" to write "West."  At the meeting, Coar did not ask Cotton to speak to any witnesses, nor did he ask if there was a security video.  Cotton subsequently terminated Coar's employment for a second violation of Company Rule 37, on October 26, 2006.

On October 30th, Coar's union filed a grievance on his behalf.  The union submitted written statements from three hourly employees.  Two employees wrote only that Coar was wearing his harness when they saw him working on the night in question.  One employee, Victor Dickerson ("Dickerson"), wrote that he saw Coar tied off to the fall restraint system when he passed through the area from another part of the plant.  According to Cotton, these witness accounts did not contradict his supervisors' statements that together they saw Coar working without being hooked to the fall restraint system.  Dickerson's account did not establish that he saw

Coar using the fall restraint system at the same time the three supervisors viewed the alleged unsafe behavior.

On November 7, 2006, Coar's union requested a copy of the security video from the cameras located in the "East Two" and "West Two" areas for the time period of Coar's alleged misconduct.  Cotton denied the request the following day without explanation.  Cotton testified later that he does not routinely use video surveillance in his investigations; he did not review the security video before making the decision to terminate Coar; the video would not have allowed him to identify Coar or see if he was attached to the fall restraint system; and at the time the union requested the video, it had been recorded over and no longer existed.

In response to the union's grievance, Cotton upheld Coar's termination, writing: "Mr. Coar was observed by three (3) supervisors not hooked up to the fall arrest system.  This was Mr. Coar's second offense. The discharge stands."  (Coar Dep., Def. Ex. 15.)  Coar requested that his union arbitrate the grievance, but the union denied his request and did not take further action.  Coar filed a charge of discrimination and retaliation with the EEOC on October 31, 2006.

III.   Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the

nonmoving party to go beyond the pleadings and by [her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.    Analysis.

Plaintiff contends that AAI illegally terminated his employment under Title VII and § 1983 because he is an African-American, and because he engaged in protected conduct by complaining about racial harassment and discrimination.  Defendant denies these charges and maintains that AAI is entitled to summary judgment because Coar has insufficient evidence to support his claims.

A.    Race Discrimination.

Coar has not argued that he has direct or statistical evidence of racial discrimination with regard to his discharge; therefore, we analyze his claim

using the analytical framework established by the U.S. Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1333 (11th Cir. 1998).  First, the plaintiff must establish a prima facie case of discrimination.  The prima facie case creates a presumption of discrimination, which the employer must rebut with legitimate, nondiscriminatory reasons for the employment action(s) at issue.  "If the employer successfully rebuts the presumption, the burden shifts back to the plaintiff to discredit the proffered nondiscriminatory reasons by showing that they are pretextual."  *Standard*, 161 F.3d at 1331.

      1.    Prima Facie Case.

To establish his prima facie case of discriminatory discharge, Coar "must show that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by a person outside his protected class or was treated less favorably than a similarly-situated individual outside his protected class."  *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Ed.*, 342 F.3d 1281, 1289 (11th Cir. 2003).  AAI does not dispute that

Plaintiff is a member of a protected class, that he was qualified for his position, and that he suffered an adverse employment action. Coar does not argue nor present evidence that he was replaced by a person outside his protected class. The parties do dispute, however, whether Plaintiff can establish that similarly-situated individuals outside the protected class were treated more favorably.

"To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that he and the employees are similarly situated in all relevant respects." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997); *see also Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir.), *reh'g en banc denied*, 116 Fed. Appx. 257 (11th Cir. 2004). "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Id.* "The most important factors in the disciplinary contexts are the nature of the offenses committed and the nature of the punishments imposed." *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001), *cert. denied*, 535 U.S. 1013 (2002)

(ellipses omitted).  "In order to satisfy the similar offenses prong, the comparator's misconduct must be *nearly identical* to the plaintiff's in order 'to prevent courts from second-guessing employer's reasonable decisions and confusing apples with oranges.'" *Id.* (citing *Maniccia v. Brown*, 171 F.3d 1364, 1368-69 (11th Cir. 1999)) (emphasis added); *see also Burke-Fowler v. Orange County, Florida*, 447 F.3d 1319, 1323 n.2 (11th Cir. 2006) (reaffirming the "nearly identical" requirement despite one panel's conclusion that only "similar" misconduct is required).  It is "require[d] that the quantity and quality of the comparator's misconduct be nearly identical."  *Maniccia*, 171 F.3d at 1368.

AAI has presented evidence that Plaintiff was terminated for committing a second violation of Company Rule 37.  Specifically, Defendant found that Coar had failed to use the fall restraint system while working on the wing of an airplane after he had been disciplined less than four months prior for sitting on the rail of a B-4 aircraft stand, approximately ten feet in the air, while talking on his cell phone.  It is undisputed that the penalty for a first offense of Company Rule 37 is a written warning to suspension, and the penalty for a second violation is immediate discharge.  In his response

memorandum, Plaintiff does not separate his argument on the prima facie

case from his argument on pretext, nor does Coar clearly delineate which

employees he contends engaged in what he terms "identical misconduct."

(Doc. 23 at 27.)  Plaintiff quarrels, however, with the manner in which the

following employees were disciplined:

> -Tankersley, Gurganus, and Sims, the three white supervisors who
>
> witnessed his alleged misconduct, committed a safety violation by
>
> failing to confront Coar when they saw him working on the wing of an
>
> aircraft without being hooked to the fall restraint system.  (Doc. 23 at
>
> 27-28.)  The evidence shows that this was the first time the three
>
> supervisors were faced with such a situation.  Tankersley and Gurganus
>
> were counseled by their immediate supervisor, Robert Gardner,
>
> Director of Backshops/Flightline, for their conduct, and a letter was
>
> written for their personnel file.  (Tankersley Dep., Pl. Exs. 2, 3.)
>
> Cotton testified he informed Sims that he would be immediately fired
>
> if he ever again failed to stop an employee from working in such an
>
> unsafe manner.  (Cotton Decl. ¶ 7.)
>
> -On June 29, 2006, Casey Gardner ("Gardner"), a white employee,

received only a written warning for a first offense under Company Rule 37 because he failed to wear his harness and safety glasses.  (Doc. 23 at 17, 28.)

-In 2004, Gardner was reinstated and given a "last chance agreement" after being terminated for falsifying his time on a PR 100 form, in violation of Company Rule 1.  (*Id*. at 16, 29.)

-At some point in time, Cotton witnessed Gary Howell ("Howell"), a white employee, not wearing safety glasses, but he issued no discipline.  (*Id*. at 29.)  The evidence shows, however, that Cotton concluded Howell was following company procedure because he was doing a close inspection with reading glasses.  (Cotton Dep. at 147-49.)

Plaintiff does not dedicate any argument to explaining how any of these employees' misconduct was "nearly identical" to his own, nor does he present evidence that a similarly situated employee was not terminated after committing two violations of Company Rule 37.  Coar attempts to cast Gardner's June 29th offense as two "simultaneous" Rule 37 violations (Doc. 23 at 28), but there is insufficient evidence to support that interpretation. It is undisputed that when Gardner received his Rule 37 discipline on June

29, 2006, it was his first, and Plaintiff has not shown that multiple disciplines should have been issued, or ever were issued, in similar circumstances.  Coar also has not argued nor established that Gardner's misconduct on June 29th, for which he received a written warning, was "nearly identical" to the conduct Plaintiff admits he engaged in before receiving his first Rule 37 discipline and suspension.  Because Plaintiff has not adduced sufficient evidence to convince a reasonable jury that non-minority employees in similar circumstances were disciplined less severely for misconduct that was "nearly identical" to his alleged misconduct, "summary judgment is appropriate where no other evidence of discrimination is present."  *Holifield*, 115 F.3d at 1562.

Coar, however, maintains that he has presented other circumstantial evidence of race discrimination.  In the Eleventh Circuit, "[p]resenting a prima facie case is not onerous as it requires only that the plaintiff establish facts adequate to permit an inference of discrimination."  *Rioux v. City of Atlanta*, 520 F.3d 1269, 1275 (11th Cir. 2008) (citing *Holifield*, 115 F.3d at 1562).  In cases where the evidence does not fit neatly into the classic prima facie case formula, for example," the Eleventh Circuit has "stated that a

prima facie case of disparate treatment can be established by any proof of actions taken by the employer from which we infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations." *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1268 (11th Cir. 1999) (quotations omitted).  The appellate court recently reiterated this rule in *Rioux*, when it explained that a prima facie case can be established, in the absence of traditional elements, if a plaintiff comes forward with "other [circumstantial] evidence of discrimination."  *Rioux*, 520 F.3d at 1277.

In support of his contention that he has shown sufficient circumstantial evidence of discrimination to establish a prima facie case, Plaintiff points to the alleged events and actions that formed the basis of his earlier EEOC charges, including being called the "N" word by a fellow employee (not Cotton) in 2001; earlier discipline by Cotton and other supervisors, which Coar argues was discriminatory; and Cotton terminating Coar in 2004, soon after Plaintiff filed an internal complaint of race discrimination against his

then-supervisor.[4]  (Doc. 23 at 30.)  Evaluating this evidence as a whole, the Court concludes it is insufficient to convince a reasonable jury that Cotton acted with discriminatory animus when he terminated Coar in 2006. Plaintiff has, therefore, failed to establish his prima facie case.  Even if the Court concluded otherwise, further analysis under *McDonnell Douglas* shows that summary judgment is proper.

### 2.    Legitimate Reason/ Pretext.

As discussed above, AAI has proffered evidence that Coar's employment was terminated because he failed to use the fall restraint system while working on the wing of an airplane after he had been disciplined for another Company Rule 37 violation less than four months prior.  Plaintiff has not disputed that this a legitimate, nondiscriminatory reason for his discharge; he must, therefore, show that AAI's reason is pretextual.  *Standard*, 161 F.3d at 1334.

"The inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance."  *Rioux*, 520 F.3d at

---

[4]Cotton subsequently reinstated Coar's employment, writing in an email that he "made a mistake."  (Cotton Dep., Pl. Ex. 6.)

1278 (quoting *Holifield*, 115 F.3d at 1565).  "The plaintiff must demonstrate weaknesses or implausibilities in the employer's proffered legitimate reasons for its action sufficient for a reasonable factfinder to disbelieve the reasons."  *Id*. (citing *Silvera*, 244 F.3d at 1258).  "It is the plaintiff's burden not merely to raise a suspicion regarding an improper motive, but rather to demonstrate there is a genuine issue of material fact that the employer's proffered reason for his [termination] was pretextual."  *Id*. (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1024-25 (11th Cir. 2000)).

Coar denies that he committed the second violation of Company Rule 37 and challenges Cotton's investigation of the alleged misconduct.  Plaintiff contends that Cotton's investigation was "flimsy and slanted" (Doc. 23 at 30); and argues that the following evidence indicates Cotton  may not have honestly believed Coar was guilty: the three supervisors' deposition testimony shows differences in the distance they stood from Coar (Doc. 23 at 24); Gurganus changed his written statement to say he observed Coar five minutes earlier (*id*. at 24-25); Cotton allowed the surveillance video to be taped over and did not explain to the union that the tape was not available when he denied it's request for a copy (*id*. at 25-26); Cotton crossed out the

word "East" to write "West" on Tankersley's written statement (*id*. at 24);

and Cotton "ignored witnesses that could prove exculpatory" (*id*. at 31).

Witness disputes over distance, however, were revealed in deposition

testimony; not before Cotton made his decision to terminate Coar.  There

is no evidence that the exact time the three supervisors saw Coar engaged

in the alleged misconduct was an issue for Cotton; the one employee who

claims he saw Coar hooked to the fall arrest system does not say what time

he walked by the E12.  The other two witness statements provided by the

union only state that they saw Coar wearing his harness, which was not

disputed.  Cotton testified he did not view the surveillance footage before

making his decision, did not believe the information would be helpful, and

did not routinely use such footage in his investigations.  Moreover, there is

no evidence that Cotton's marking on Tankersley's statement was part of a

conspiracy or coverup; Tankersley's deposition testimony reveals that the

cross-out was made before Tankersley signed the statement and the

correction accurately reflected his account.  (Tankersley Dep. at 54-56.)

Cotton's conclusion may have been wrong.  Perhaps Coar was not

guilty of the alleged misconduct in October 2006.  However, "[w]e are not

interested in whether the conclusion is a correct one, but whether it is an honest one." *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002). "[T]he question the factfinder must answer is whether [Defendant's] proffered reasons were "a coverup for a . . . discriminatory decision." *Id*. "We are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." *Id*. (quoting *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999)).

Plaintiff does not advance a "cat's paw theory" and argue that the three witness supervisors were biased, and Cotton accepted their word without investigation. *See Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999). Instead, Coar wants the Court to conclude that Cotton is the biased individual—soliciting only statements that would implicate Coar, and manipulating and manufacturing statements for supervisors to sign. Plaintiff has not proffered sufficient evidence to support these allegations, nor has he shown that under similar circumstances, Coar conducted his investigation in a manner that favored white employees. Because Coar has failed to produce sufficient evidence to allow a reasonable

jury to infer that race discrimination was the real reason for Plaintiff's discharge, summary judgment will be entered in favor of the defendant on this claim.

B.    Retaliation.

Coar also contends that Defendant retaliated against him in violation of Title VII when it terminated his employment with the company.  In order to establish a prima facie case of retaliation, a plaintiff must show: "(1) that he engaged in statutorily protected expression; (2) that he suffered an adverse . . . action; and (3) that there is some causal relationship between the two events." *Holifield*, 115 F.3d at 1566.  AAI concedes that Coar meets the first two elements, but argues that Coar cannot establish the requisite causal relationship between his discharge and alleged complaints of discrimination.

To establish a causal connection, a plaintiff "need only show 'that the protected activity and the adverse action were not wholly unrelated.'" *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999) (quoting *Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985)).  The plaintiff must also show that the decision-maker was aware

of the protected conduct.  *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000) (quoting *Farley v. Nationwide Mut. Ins.*, 197 F.3d 1322, 1337 (11th Cir. 1999)).  There is no evidence that Gurganus, Tankersley, or Sims were aware of Coar's previous complaints of race discrimination. Plaintiff has established, however, that Cotton had knowledge of a number of Plaintiff's complaints, especially his April 2004 EEOC charge.  And, there is evidence that suggests Cotton may have been aware of the EEOC charge filed in January 2006.

Without more, however, a nearly-nine month gap in time between Plaintiff's last complaint of discrimination and his termination is not sufficient circumstantial evidence to establish a causal connection.  *Higdon v. Jackson*, 393 F.3d 1211, 1220-21 (11th Cir. 2004) (concluding that a three month temporal proximity, without more, "does not allow a reasonable inference of a causal relation"); *Wascura v. City of S. Miami*, 257 F.3d 1238, 1248 (11th Cir. 2001) ("[T]hree and one-half month temporal proximity is insufficient to create a jury issue on causation."); *Maniccia v. Brown*, 171 F.3d 1364, 1370 (11th Cir. 1999) (citing *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997), for the proposition that a "4-month lag

between protected activity and termination [is] not sufficient to justify an inference of causation").

Acknowledging that temporal proximity of nine months is insufficient, Plaintiff maintains that this Court should consider the EEOC charge filed on October 31, 2006.  (Doc. 23 at 36.)  Plaintiff suggests that Cotton was not officially discharged until Cotton upheld the termination in November 2006. (*Id.*)  Assuming Cotton knew of the October 31 EEOC charge, which Plaintiff has not established, it is undisputed that Coar was terminated on October 26, 2006, after an investigation that included a meeting with the plaintiff. Even if Plaintiff had not already been terminated, "[e]mployers need not suspend previously planned" employment actions upon discovering that the employee has engaged in alleged protected activity.  *Clark County School Dist. v. Breeden*, 532 U.S. 268, 272 (2001).  "[T]heir proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality."  *Id.*

Plaintiff contends that he has offered more circumstantial evidence of causation.  Specifically, Coar references Cotton's testimony that he "stay[s] away from the 36" plaintiffs who participated in litigation against AAI;

Cotton terminating Plaintiff's employment in 2004, one month after he filed
an internal complaint of discrimination, and then reinstating Coar's
employment when an EEOC charge was filed; and Cotton being implicated
for retaliatory conduct in another employee's federal discrimination claim.
(Doc. 23 at 36.)

First, the Court has reviewed Cotton's deposition testimony
thoroughly, and like many of the quotes Plaintiff uses throughout his
response memorandum, the testimony Coar attributes to Cotton is taken out
of context.   Cotton did not say that he stayed away from all thirty-six
employees involved in a case against Defendant.   Cotton testified:

> I stay away from the 36.   I don't know who they are,
> other than Walter Burns, because his name is
> mentioned.   the only active employees that I know
> that are in that 36 are the former president of the
> UAW, which is A.D. Thomas, and somebody that has
> brought suit against us within this past year is
> Aurthur Lane.   Those three people are the only three
> that I know by name that I'm aware that I know that
> are in that suit or are party to that suit.

(Cotton Dep. at 25-26.)

Regardless, the Court finds that the evidence proffered is insufficient
to show causation between Plaintiff's complaints of discrimination and his

termination in October 2006.  Even if the Court concluded otherwise, and held that Plaintiff had established a prima facie case of retaliation, Coar has not adduced sufficient evidence to show that AAI's stated reason for the termination was pretext for retaliation.

"Once a plaintiff has established a prima facie case [of retaliation], the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001) (citing *Olmstead v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998); *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994)).  "The ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct remains on the plaintiff." *Id*. (citing *Olmstead*, 141 F.3d at 1460).

AAI contends that Plaintiff was disciplined because of Cotton's good faith belief that Coar worked on the wing of an aircraft without being hooked to the fall restraint system, and this was his second Company Rule 37 violation.  For many of the reasons set forth above in the Court's discussion of Plaintiff's claim of discriminatory discharge, Coar has not met

his legal burden to show that Defendant's legitimate, non-retaliatory reason for his termination was pretext for retaliation.   Coar has not proffered sufficient evidence to convince a reasonable jury that employees who have not complained of retaliation were disciplined less severely for behavior that was "nearly identical" to his own alleged misconduct.   And, there is insufficient evidence to infer that Cotton did not believe Coar engaged in the misconduct of which he was accused.   Because Plaintiff has failed to show pretext, his retaliation claim is also due to be dismissed.

V.     Conclusion.

For the reasons set forth above, Defendant's motion for summary judgment is due to be granted in all respects.   A separate order will be entered.

Done this 5th day of May 2009.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671